FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 JAN 31  PM 5: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JAMES EDWARD DEERMAN, | } | |
| PATRICIA L. DEERMAN, et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | CASE NO. CV 96-B-1379-S |
| v. | } | |
| | } | |
| FEDERAL HOME LOAN | } | |
| MORTGAGE CORPORATION, | } | |
| | } | |
| Defendant. | | |

ENTERED

FEB 0 3 1997

## MEMORANDUM OPINION

Plaintiffs, James Edward Deerman and Patricia L. Deerman ("the Deermans") and Francis

E. Bauer and Karen A. Bauer ("the Bauers"), filed this putative class action for compensatory,

declaratory and injunctive relief[1] seeking cancellation of the obligation in their mortgage contracts

to pay for private mortgage insurance ("PMI"). Defendant, the Federal Home Loan Mortgage

Corporation ("FHLMC" or "Freddie Mac"), is a corporate instrumentality of the United States that

purchased the mortgages of the plaintiffs some time after they were originated by other financial

institutions. The FHLMC has moved to dismiss the plaintiffs' complaint pursuant to Fed. R. Civ.

P. 12(b)(6). The court is of the opinion that defendant's motion to dismiss is due to be granted.

---

[1] Plaintiffs state in their complaint that this is an action "for declaratory and injunctive relief," (Am. Compl. ¶ 1), but the second cause of action seeks "appropriate damages" for violation of New York Insurance Law. (Am. Compl. ¶ 38).

## I.    BACKGROUND

### A.    The FHLMC and The Mortgage Insurance Market

Congress created the FHLMC in order to promote a stable secondary market for residential mortgages. *See* 12 U.S.C. § 1452 (1994); Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, § 731, 103 Stat. 183, 429. The FHLMC does not make loans; rather, it purchases mortgages that have already been made in order to increase the liquidity of mortgage investments and to improve the distribution of investment capital available for residential mortgage financing. *See* 12 U.S.C §§ 1451, 1454. The FHLMC is specifically prohibited from buying loans with a loan-to-value ("LTV") ratio in excess of 80% unless the loan carries mortgage insurance or another type of "credit enhancement" to reduce the risk of an uncollectible deficiency judgment in the event of default. 12 U.S.C. § 1454(a)(2).

Mortgage insurance, whether issued through a federal program (like the Federal Housing Authority) or by a private insurer, is an insurance policy issued to the lender (or its successor-in-interest) that is designed to protect against the risk of loss in the event of default if the value of the unpaid balance of the loan exceeds the value of the mortgaged property at foreclosure. *See generally Hinton v. Fed. Nat'l Mortgage Ass'n*, 945 F. Supp. 1052, 1054-55 (S.D. Tex. 1996). Although the lender takes out the insurance, the existence of the policy enables a borrower to borrow a greater percentage of the purchase price, thereby reducing the amount of down payment required and bringing the price of home ownership within the reach of more people. D. Barlow Burke, Jr., *Law of Federal Mortgage Documents* § 4.1, at 209 (1989). Because of the 80% LTV cap that would exist without such insurance, mortgage insurance permits the lender to extend credit to high-risk borrowers who would not have otherwise qualified for it with the knowledge

2

that such loans are eligible to be purchased by the secondary market. *See Burke, supra*, § 4.2, at 216.

The FHLMC does not service the mortgages in which it has an interest. Rather, those mortgages are serviced for the FHLMC by loan "servicers" in the primary market with whom the FHLMC contracts. Mortgage servicing consists primarily of collecting the borrower's payments, maintaining all of the necessary accounts (including an escrow account for taxes and insurance) and making the necessary disbursements (including remittance of principal and interest to the FHLMC and disbursements for taxes and insurance). The relationship between the FHLMC and its servicers is governed by the Freddie Mac Seller/Servicer Guide ("the Guide"). If there is mortgage insurance on a loan when purchased by the FHLMC, Chapter 61 of the Guide includes provisions relating to its cancellation. For example, the lender or servicer agrees that, if the borrower requests cancellation, the servicer must cancel the mortgage insurance, provided that certain narrowly defined conditions are satisfied, including (in many instances) a borrower-paid appraisal of the property's current value. *See* Guide § 61.2, cited in the Amended Complaint at ¶ 15.

### B.   Plaintiffs' Mortgages

According to the Amended Complaint, the Deermans and the Bauers each obtained mortgages on their homes, in Alabama in 1988 and New York in 1986, respectively. (Am. Compl. ¶¶ 21, 25). Each originating lender required mortgage insurance as a term and condition of the loan. The loans were later sold to the FHLMC. (Am. Compl. ¶¶ 4-5). Each mortgage agreement specifically addressed the issue of how long the borrower must pay for mortgage insurance if mortgage insurance was required. The Deermans' mortgage states that mortgage

3

insurance premiums must be paid by the Deermans to maintain the insurance "until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law." (Am. Compl. Ex. A ("Deerman Mortgage") ¶ 7). The mortgage also states that "escrow items" such as "mortgage insurance premiums, if any" must be paid "until the Note is paid in full," subject to applicable law or a written waiver by the Lender. (Deerman Mortgage ¶ 2). The Bauers' mortgage contract similarly provides that they must pay monthly mortgage insurance payments "until the requirement for mortgage insurance ends according to [Borrower's] written agreement with Lender or according to law." (Am. Compl. Ex. B ("Bauer Mortgage") ¶ 7). In other words, the borrowers, if required to pay for mortgage insurance at the time the loan was made, agreed to continue doing so until the note was fully repaid unless some separate written agreement or applicable law provided for earlier termination. Plaintiffs do not allege that any such written agreement exists for the Bauers or the Deermans.

## II.   SUMMARY OF RELIEF SOUGHT BY PLAINTIFFS

Plaintiffs advance three causes of action. In the "First Cause of Action," plaintiffs allege that the FHLMC violated New York General Business Law section 349 (which prohibits "deceptive acts and practices" in New York) by failing to affirmatively provide notice to the Bauers, the Deermans and each other member of the proposed class of their "right" to cancel mortgage insurance, regardless of the state where the property secured by the mortgage is located. (Am. Compl. ¶¶ 29-32). Plaintiffs alternatively suggest that if New York law does not apply to all borrowers, the deceptive acts and practices laws of the states where the subject property is located may apply. In their "Second Cause of Action," plaintiffs assert a private right of action for damages and other relief under § 6503 of the New York Insurance Law, regardless of the state

in which the property secured by the mortgage is located. (Am. Compl. ¶¶ 33-38). The "Third Cause of Action" seeks a declaratory judgment on the rights of the borrowers regarding cancellation of and notice about PMI under the mortgage contract and the Guide.[2] (Am. Compl. ¶ 39-45).

## III.   DISCUSSION OF CLAIMS

### A.    Standard under Rule 12(b)(6)

The court is empowered to dismiss an action "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *accord Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court must take factual allegations as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996). A complaint should be dismissed, however, if it is clear that no relief could be granted even crediting plaintiffs' allegations of the facts. *See id.* at 349. Furthermore, the court is under no duty to rewrite plaintiff's complaint to find a claim. *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993). Finally, the mortgage contracts attached to the Amended Complaint and relevant sections of the Guide may be considered under Rule 12(b)(6) without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 10(c); *Cortec Ind., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *I. Meyer Pincus & Assoc. v. Oppenheimer &*

_____

[2]  Plaintiffs claim that they are third-party beneficiaries of the Guide. (Am. Compl. ¶ 43).

5

*Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  Although the Guide was not attached as an exhibit to plaintiffs' complaint, it was referenced in the complaint, (*see* Am. Compl. ¶ 13), and is integral to some of plaintiffs' claims.  Therefore, the Guide may be considered when deciding defendant's motion to dismiss without converting the motion into one for summary judgment.

### B.    Plaintiffs' Obligations Under The Mortgage Contracts

Although plaintiffs seek relief under a variety of legal theories, their obligations to pay for mortgage insurance premiums rests ultimately on the terms of the mortgage contracts they signed. Those instruments contemplate life-of-loan[3] mortgage insurance, and they do not provide a specific right of cancellation to the borrower.  This same conclusion has been reached by at least three other courts that have considered similar mortgage contracts.  Those courts rejected arguments that these contracts include a right of cancellation of mortgage insurance in the borrowers or a right of the borrowers to notice from the lenders or their assignees regarding cancellation.  *See Hinton*, 945 F. Supp. at 1056 (provisions of the deed of trust "require [borrower] to maintain mortgage insurance for the life of the loan")[4]; *May v. Old Kent Bank and Trust Co.*, No 95-2697, slip op. at 2  (Mich. Cir. Ct., July 15, 1996) (mortgage insurance payments "are due for the duration of the loan"); *Siegl v. Twin City Federal Mort. Corp.*, No. CT-95-2306, slip op. at 13 (Minn. Dist.

---

[3]  "Life-of-loan" refers to mortgage insurance that must be maintained for the duration of the mortgage absent some other arrangement.  Both the Deermans' and the Bauers' mortgage contracts state that they must pay the premiums for mortgage insurance until the loans are extinguished, absent a written agreement stating otherwise or the termination of that obligation by applicable law.

[4]  The language from the deed of trust quoted in *Hinton* relating to mortgage insurance is very similar to the language in both the Deerman and Bauer mortgages.  The *Hinton* court concluded that this language created no contractual obligation to cancel PMI at any time.  *Id*.

Ct., July 26, 1995) (mortgage contract "does not provide a right to cancel PMI"). As set forth in greater detail below, the individual legal theories articulated by the plaintiffs each fail to state a cause of action upon which relief can be granted, but the absence of a contractual **right** of the plaintiffs to cancel their mortgage insurance is a flaw that fundamentally undermines plaintiffs' Amended Complaint.

### C.    Claims Under State Deceptive Acts and Practices Laws

Plaintiffs assert that the Deermans and the Bauers are entitled to relief under New York General Business Law section 349, a consumer protection statute that proscribes deceptive acts and practices in New York ("UDAP"). They also suggest that if the New York law does not apply across the FHLMC's entire portfolio of loans, individual state UDAP laws may apply.

### 1.    The Deermans' Claims under the New York UDAP

The Deermans do not state a claim under the New York UDAP, which regulates only acts or practices in the State of New York. *See* N.Y. Gen. Bus. Law § 349(a) (McKinney 1996) (declaring unlawful "deceptive acts or practices" in the conduct of any business or the furnishing of any service **"in this state"**) (emphasis added). The plaintiffs do not allege that the FHLMC performed any act or practice related to the Deermans in the State of New York. Rather, the plaintiffs contend that New York law applies by virtue of Section 50.2 of the FHLMC Guide, which provides that the "rights and obligations of Freddie Mac and the Seller or Servicer" will be determined in accordance with federal law" and that "[i]nsofar as there may be no applicable precedent and insofar as to do so would not frustrate any provision of the Guide or the transactions governed thereby . . . the laws of the State of New York shall be deemed reflective of the laws of the United Sates." This "choice of law" provision in the Guide relates exclusively to the "rights

7

and obligations" between the FHLMC and the financial institutions who sell mortgages to and service mortgages for the FHLMC. It does not define any rights and obligations between the FHLMC and the Deermans or any other borrower. The borrowers' rights and obligations are set forth in each borrower's individual note and mortgage, which specifically provide that they are to be governed by individual state laws. (*See* Deerman Mortgage ¶ 15).[5] Plaintiffs in effect claim that these choice of law provisions in the mortgage contracts are altered when the FHLMC purchases the loan. Plaintiffs' assertion is erroneous.[6] When the FHLMC purchased these loans, the mortgage contracts were not amended, and the borrowers were not even parties to these transactions. The choice of law provision in the Guide does not change the terms of the mortgage contracts nor provide a basis for the application of the New York UDAP to actions which do not otherwise meet the statute's jurisdictional requirement of conduct in New York.[7]

Plaintiff's construction of Section 50.2 is also misguided because, if taken to its logical conclusion, it would lead to the application of other portions of New York law to other non-New York loans that comprise the majority of the FHLMC's portfolio. For example, New York foreclosure laws might be construed to govern the foreclosure of mortgages on properties in

---

[5] Specifically, the Deerman mortgage states: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." *Id*. at ¶ 15. The Bauer mortgage states: "This Security Instrument is governed by federal law and the law that applies in the place where the Property is located." (Bauer Mortgage ¶ 15).

[6] This discussion of the Guide's "choice of law provision" is in addition to the fact that § 50.2 does not actually "choose" New York law. Section 50.2 merely says that when no other precedent exists, New York law is **reflective** of the law of the United States. The section does not say that New York law is to be applied in its own right.

[7] This is true whether or not the plaintiffs are third-party beneficiaries of the Guide.

8

California, or New York real property tax laws might be construed to govern the payment and priority of taxes on properties in Michigan. These applications of New York law are not intended by Section 50.2, and plaintiff's choice-of-law theory would frustrate the FHLMC's congressional mandate as a nationwide investor in home mortgages.  New York law does not apply to the Deermans or to any other borrower whose loan is not located in New York.

### 2.    The Deermans' Claims Under the Alabama DTPA

Plaintiffs alternatively claim that the deceptive acts and practices laws of the state in which each class member resides may apply, rather than New York law.  Assuming the Deermans, as Alabama residents, seek to do so, they have failed to state a claim upon which relief may be granted under the Alabama Deceptive Trade Practices Act ("DTPA"), Ala. Code §§ 8-19-1 to 8-19-15 (1993).

Like many other state "UDAPs," the Alabama DTPA provides a cause of action for a "consumer," Ala. Code § 8-19-10, who is defined as a person "who buys goods or services for personal, family or household use."  Ala. Code § 8-19-3(2).  In the statute, "goods" are defined as including but not limited to: "any property, tangible or intangible, real, personal, or any combination thereof, and any franchise, license, distributorship, or other similar right, privilege, or interest."  Ala. Code § 8-19-3(3) (1993).  "Services" are defined as: "[w]ork, labor, and other services, including but not limited to services furnished in connection with the sale or repair of goods."  *Id.* § 8-19-3(7).  Any claim that the Deermans would have under this statute would fall within the catch-all provision which provides that, "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce," is unlawful.  *Id.*

9

§ 8-19-5(23).[8] Only "consumers" have private rights of action under this section. *Id.* § 8-19-10.

The question before the court, therefore, is whether or not a mortgage transaction and the ownership and servicing of a mortgage fall within the provisions of the Alabama DTPA. For the Deermans to have a cause of action under this statute, a mortgage loan must fit within the statute's definition of a good or service.

Under the Alabama DTPA, any bank or affiliate of a bank that is regulated by one of a number of agencies is exempt from the provisions of the Alabama DTPA. Ala. Code § 8-19-7. Most loans and many, if not most, mortgage loans are made by banks or affiliates of banks that are regulated by one of the listed agencies. Therefore, by virtue of this section, most loans and mortgages would not be subject to the provisions of the Alabama DTPA. This is a strong indication that the Alabama legislature did not intend to include loans and mortgages within the definition of goods or services for purposes of this statute. No court has held that a loan is a good or service under this statute, and this court will not be the first to do so. The court is of the opinion, therefore, that a mortgage loan is not a good or service under the Alabama DTPA. As a result, the Deermans do not fall within the definition of consumer under the statute with respect to their mortgage, and they do not have a private right of action under this statute.

Even if the court were to assume that the Deermans fell within the definition of consumer and that the Alabama DTPA, therefore, applied to the FHLMC in this context, the Deermans have, nevertheless, failed to state a claim under the Alabama DTPA. They have not complied

---

[8] "Trade or commerce" includes but is not limited to: "the advertising, buying, offering for sale, sale or distribution or performance of any service or goods, and any other article, commodity or thing of value wherever situated and shall include any trade or commerce affecting the people of this state." *Id.* § 8-19-3(8).

10

with the pre-filing demand requirement imposed by the statute. The Alabama DTPA provides that "at least 15 days prior to the filing of any action under this section," a prospective plaintiff must file a "written demand" for relief that "reasonably describ[es] the unfair or deceptive act or practice relied upon and the injury suffered." Ala. Code § 8-19-10(e).[9] The Deermans' failure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to their claim under the Alabama law. *See Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988), *aff'd*, 885 F.2d 879 (11th Cir. 1989).

### 3.    The Bauers' Claims Under the New York UDAP

The Bauers also fail to state a claim under the New York UDAP. First, plaintiffs cannot demonstrate that the FHLMC committed any "deceptive acts or practices" in the state of New York. The New York UDAP requires such a showing. N.Y. Gen. Bus. Law § 349(a) (McKinney 1996). Plaintiffs do not allege that the FHLMC committed any "act or practice" in New York, let alone any that were "deceptive."

Plaintiffs base their claim under this statute on the acts of the loan servicers rather than on acts committed by the FHLMC itself. The question, therefore, is whether or not the FHLMC is bound by acts of its loan servicers. Neither the Supreme Court nor the Eleventh Circuit has spoken on the issue of whether or not the loan servicers are agents of the FHLMC. The FHLMC contends that the servicers are not agents but, rather, independent contractors. Plaintiffs contend that the loan servicers are agents of the FHLMC. The courts that have considered this question

---

[9] The demand requirement applies only to "prospective respondent[s]" who have places of business or assets in the state. *Id*. The FHLMC meets the asset condition because it owns at least one mortgage on property located in the state.

11

are divided on the issue. The court, however, does not need to decide the agency issue because, regardless of whether or not the seller/servicers are agents, the FHLMC is protected by the *Merrill* doctrine.

The *Merrill* doctrine is based on the Supreme Court's decision in *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947). In that case, the Supreme Court held that where a federal regulation prohibited the corporation from insuring a certain crop (reseeded spring wheat), an agent for the corporation could not bind the corporation to so insure that crop even though neither the agent nor the farmer was aware of the regulation. *Id.* at 384-85. The Court thus held, despite acknowledging that "we assume that recovery could be had against a private insurance company." *Id.* at 383. In fact, the Court noted: "[T]he rules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency like the Corporation, unless Congress has so provided." *Id.* at 384 n.1.

The FHLMC is protected by the *Merrill* doctrine. The FHLMC is a federal instrumentality that relies on these seller/servicers to service the mortgages that the FHLMC owns. As a federal instrumentality, it is not bound by the unauthorized acts of its seller/servicers. Servicers are expressly required by the Guide to comply with all applicable law. *See* Guide § 53.8. Furthermore, the servicers are required to give all disclosures required by law relating to the terms under which mortgage insurance may be canceled. *See* Guide § 61.1. Therefore, to the extent that New York law, including the New York UDAP, would require disclosure of the cancellation provisions, the servicers are required to follow that law. Their unauthorized failure to do so is not a valid basis for recovery against the FHLMC. As far as the court is aware, all courts that have considered the applicability of *Merrill* to the FHLMC or similar entities have reached a

12

similar conclusion.

In *Mendrala v. Crown Mortgage Co.*, 955 F.2d 1132 (7th Cir. 1992), the court held that the FHLMC was protected by the *Merrill* doctrine and was not bound by the unauthorized actions of its seller/servicer. *Id.* at 1140-41. The court stated: "Holding the FHLMC responsible for the unauthorized actions of an entity such as [its seller/servicer] would thwart its congressional purpose." *Id.* at 1141. In that case, the mortgagors attempted to refinance their note by taking out a different loan with another bank and paying off the note held by the FHLMC as serviced by Crown. The note held by the FHLMC contained a lock-out provision, however, that precluded pre-payment of the note. Nonetheless, Crown accepted the prepayment and sent a pay-off statement to the Mendralas. The FHLMC informed Crown of the lock-out provision and refused to accept the prepayment. The Mendralas asserted that the FHLMC was estopped from reversing the actions of Crown, but the court held that the FHLMC was not bound by Crown's acceptance of the pre-payment because Crown was not authorized to accept pre-payment due to the lock-out provision. *Id.* at 1141-42.

Other courts that have considered this issue have also reached a similar conclusion. In *Dupuis v. Federal Home Loan Mortgage Corp.*, 879 F. Supp. 139 (D. Me. 1995), the court held that despite the fact that the seller/servicer was the FHLMC's agent and despite the fact that the FHLMC would be liable at common law, the *Merrill* doctrine provided a complete defense for the FHLMC on all of the plaintiff's contract claims. *Id.* at 144. Furthermore, the court held that the *Merrill* doctrine provided a defense to any claim for breach of the duty of good faith and fair dealing. *Id.* at 145. In *Hinton*, a case similar to the one at bar, the court held that the FNMA (an entity analogous to the FHLMC), "cannot be held liable for the acts of servicers that it has not

13

expressly authorized." *Hinton*, 945 F. Supp. at 1060 (citing *Merrill*, 332 U.S. at 384 n.1).

In addition, even if the Bauers could allege an "act or practice" by the FHLMC in New York, they cannot demonstrate that such an "act or practice" was deceptive. Plaintiffs' Amended Complaint alleges that the FHLMC acted deceptively by failing "to inform borrowers of their PMI cancellation rights." Neither the Bauers' mortgage contract nor any New York statute, however, requires that the FHLMC provide notice to the plaintiffs about how or when the mortgage insurance might be canceled. To the contrary, the Bauers' mortgage contract provides that they must make mortgage insurance payments "until such time as the requirement for the insurance terminates in accordance with [an agreement] or applicable law." It was not "deceptive" for the FHLMC to fail to inform the Bauers of a contract right that they do not possess. *See Hinton*, 945 F. Supp. at 1059 (holding that it was not a deceptive trade practice under the Texas DTPA to not inform plaintiff of right to cancel PMI where plaintiff did not possess that right).

### D.   Claims Under § 6503(d) of the New York Insurance Law

The "Second Cause of Action" seeks relief under § 6503(d) of the New York Insurance Law. Plaintiffs are not entitled to seek relief under this statute, however, because no private right of action exists under § 6503. A few provisions of the New York Insurance Law do explicitly permit a private cause of action. *See, e.g.*, N.Y. Ins. Law § 3420(b) (McKinney 1996); *id*. § 4226(d) ("any person aggrieved" may bring an action against an insurer under this section). Section 6503, however, is not one of those provisions. New York courts have consistently rejected efforts by insureds and other private parties to assert implied, private causes of action against insurers based on provisions of the New York Insurance Law that do not contain an explicit grant of a private right of action. *See, e.g.*, *New York Univ. v. Continental Ins. Co.*, 662

14

N.E.2d 763, 766 (N.Y. 1995); *Rocanova v. Equitable Life Assurance Soc'y*, 634 N.E.2d 940, 944 (N.Y. 1994); *Kapeleris v. Colonial Penn Ins. Co.*, 559 N.Y.S.2d 847, 848 (N.Y. App. 1990). Plaintiffs argue that despite the fact that no New York court has yet recognized a private cause of action under § 6503, this court should recognize one. The plaintiff cited *CPC Int'l Inc. v. McKesson Corp.*, 514 N.E.2d 116, 119 (N.Y. 1987), as setting out the test for implying a private right of action in New York. As noted, no court in New York has yet implied such a cause of action under § 6503, and this court is not the one to be the first. The New York Superintendent of Insurance apparently may enforce this statute because he or she is empowered to maintain civil actions and recover penalties from insurers licensed to do business in New York. *See* N.Y. Ins. Law § 109(c)-(d) (McKinney 1996). But at the present time, § 6503 may not be enforced by private litigants, including the Deermans and Bauers.[10]

Moreover, even if § 6503 could be enforced by some private litigants, it cannot be enforced against the FHLMC. The New York Insurance Law, of which § 6503 is a part, is a comprehensive scheme that licenses and regulates entities "[doing] an insurance business" in the State of New York. *See* N.Y. Ins. Law §§ 101; 1102(a) (McKinney 1996); *City of New York v. Britestarr Homes, Inc.*, 570 N.Y.S.2d 882, 885 (N.Y. Sup. Ct. 1991). More specifically, § 6503 is directed at those entities that issue "mortgage guaranty insurance" in New York. N.Y. Ins. Law § 6503(a) (McKinney 1996). The FHLMC is not one of those entities; it does not issue "mortgage guaranty insurance" or otherwise engage in the "insurance business," either in New York or

_____

[10] Arguably, the Bauers might assert a claim for breach of contract for failure to cancel their mortgage insurance if and when New York law required such cancellation. The court is confident that this is not the proper forum for the Bauers to state a claim for breach of contract under New York law.

anywhere else. Furthermore, the FHLMC does not receive any portion of the mortgage insurance premium. Therefore, § 6503 does not apply to the FHLMC and neither the Deermans nor the Bauers have a cause of action against defendant under this section.[11]

## E.     Declaratory Relief

Plaintiffs in their "Third Cause of Action" seek declaratory relief that they are entitled to "automatic cancellation" of mortgage insurance and notice of the FHLMC's mortgage insurance cancellation policies.  They are entitled to neither as a matter of law.[12]

### 1.     Automatic Cancellation

Plaintiffs seek to have the court construe their contracts and the provisions of the Guide "to provide for automatic cancellation of PMI when the unpaid principal balance of the mortgage has been paid down to 80% of the original purchase price (or original value if less), or

---

[11] For these same reasons, plaintiffs' claim in their "Memorandum in Opposition to Freddie Mac's Motion to Dismiss" that the FHLMC's alleged violation of Section 6503 is a sufficient "deceptive act or practice" to state a claim under New York GBL § 349 also fails. Furthermore, plaintiffs concede that their Amended Complaint does not specifically charge that the FHLMC's alleged violations of § 6503 are a violation of GBL § 349.  Plaintiffs were not granted leave to amend their complaint and, therefore, have not stated a claim on this ground.

[12] The FHLMC has contended that the plaintiffs have not met the jurisdictional "case or controversy" requirement for a declaratory judgment in two respects.  First, the FHLMC contends that the plaintiffs must, but fail to, allege that they submitted a written request for cancellation to their loan servicer in order to have jurisdiction under the Declaratory Judgment Act in this context.  Second, the Bauers' mortgage insurance was canceled at their request six weeks before they were added as plaintiffs in this case, and the Deermans received notice of the terms under which their mortgage insurance might be canceled over a year before they brought their claims against the FHLMC.  These facts are beyond the scope of the Amended Complaint, however.  Therefore, the court is of the opinion that for purposes of this motion to dismiss, the plaintiffs have set forth a justiciable case or controversy in plaintiff's "Third Cause of Action" for purposes of the Declaratory Judgment Act.

16

if the equity exceeds 20% by virtue of amortization and market value combination." (Am. Compl. ¶ 40). Neither the Deermans' nor the Bauers' mortgage contract provides for any such "automatic cancellation." As noted above, the Deermans' mortgage contract requires them to pay monthly payments for mortgage insurance premiums "**until the Note is paid in full.**" The contract also provides that if the lender requires mortgage insurance, "Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law." As also noted above, the Bauers' contract contains very similar provisions. Nothing in either of these contracts establishes that the FHLMC has a contractual obligation to "automatically cancel" mortgage insurance. Rather, it is clear that the mortgage contract requires that mortgage insurance payments be collected from the borrowers for the life of the loan.

Courts interpreting similar contract language in other "consumer" class actions have concluded that no duty to automatically cancel PMI existed. *See, e.g., Hinton*, 945 F. Supp. at 1057 (holding, under very similar circumstances involving the FNMA, that the plaintiff possessed no contractual right to automatic cancellation of the mortgage insurance requirement); *May v. Old Kent Bank & Trust Co.*, No. 95-2697-CK, slip op. at 1 (Mich. Cir. Ct. July 15, 1996) (interpreting virtually identical contract language in FNMA/FHLMC form mortgage to allow PMI for "duration of the loan"); *Siegl v. Twin City Fed. Mortgage Corp.*, No. 95-2306, slip op. at 13 (Minn. Dist. Ct. July 26, 1995) (denying summary judgment because of insufficient discovery but stating that the FNMA/FHLMC standard form mortgage "does not provide a right to cancel PMI"). Thus, the contracts attached to the Amended Complaint do not provide for the automatic cancellation of PMI.

17

## 2. Notice of the Right to Terminate Mortgage Insurance.

Plaintiffs further seek, by way of injunctive relief, to require the FHLMC to "notify all Freddie Mac borrowers that they have the right to terminate their PMI by making a demand to do so when their equity equals or exceeds 20% whether by amortization, market appreciation or a combination thereof." (Am. Compl. ¶ 40). Once again, the mortgage contracts contain no language that would support such relief. Just as with automatic cancellation, nothing in the mortgage contracts—the only written agreement between the borrower and the FHLMC--provides for notice to the borrowers about how PMI might be canceled. *See, e.g., May v. Old Kent Bank & Trust Co., supra*, slip op. at 3 (interpreting virtually identical contract language in FNMA/FHLMC form mortgage, court found no duty to make disclosures of any PMI cancellation policy).

Plaintiffs also allege that they are entitled to notification from the FHLMC because of the contractual "duty of fair dealing." The contractual duty of good faith and fair dealing is a requirement to refrain from "engaging in conduct that will deprive the other party of the benefits of their agreement." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980) (citation omitted). Under New York law, the duty of good faith and fair dealing will not create an obligation beyond those set forth in the terms of the contract. *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 767 F. Supp. 1269, 1281 (S.D.N.Y. 1991) (covenant of good faith "cannot expand contract rights beyond the terms of the contract"), *aff'd in part, rev'd in part on other grounds*, 970 F.2d 1138 (2d Cir. 1992), *aff'd*, 510 U.S. 86 (1993); *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990) (duty of good faith and fair dealing does not operate "to create new contractual rights"). The law in Alabama is the same. The Alabama

18

Supreme Court "has explicitly held that there is no good faith contractual cause of action"; i.e., "bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract." *See Lake Martin/Alabama Power License Ass'n v. Alabama Power Co.*, 601 So. 2d 942, 945 (Ala. 1992). Because the mortgage contracts do not require the FHLMC to notify the plaintiffs of any alleged right of cancellation of mortgage insurance, the failure to provide such notice does not constitute a breach of the duty of fair dealing. Furthermore, as noted above, the FHLMC deals with the mortgagors through its seller/servicers. Because it is these seller/servicers that would have to exercise any duty of good faith and fair dealing that might exist, their failure to do so would not generate any liability in the FHLMC because the FHLMC is protected by the *Merrill* doctrine. *See Dupuis v. Federal Home Loan Mortgage Corporation*, 879 F. Supp. 139, 145 (D. Me. 1995).

The only relevant Alabama case cited by plaintiffs, *Cedar Heights Plantation v. Niagara Portfolio Corp.*, 661 So. 2d 230 (Ala. 1995), did not specifically hold that a good faith and fair dealing cause of action exists in the mortgage context. The court appears to have assumed that such a cause of action exists, but held that the defendants did not breach any duty to exercise fairness and good faith in refusing to make the terms of the mortgage more lenient in order to help the plaintiffs avoid a foreclosure. *Id.* at 231-32. The remaining Alabama cases cited by plaintiff all involve either claims in tort (not in contract) against an insurance company or claims of statutory fraud in "special circumstances" in which the plaintiff relied on material non-disclosures at the outset of a transaction.[13]  Similarly, the cases from other jurisdictions on which plaintiffs

---

[13] *See*, e.g., *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045 (11th Cir. 1990) (liability under fraud statute for non-disclosure by insurance

rely impose a duty of disclosure only in special circumstances involving fraudulent non-disclosures on which another relied at the outset of a transaction.[14] Thus, plaintiffs cannot rely on any duty of "good faith" to impose additional obligations on the FHLMC.

### 3.    Claims Based On Third-Party Beneficiary Status

Plaintiffs contend that they are entitled to both automatic cancellation of and notice about the policies concerning PMI because they are third-party beneficiaries of the Freddie Mac Single-Family Seller/Servicer Guide ("Guide"). This assertion is incorrect as a matter of law. As its title suggests, the Guide is a contract between the FHLMC and each entity that sells mortgages to or services mortgages for the FHLMC. Guide §§ 1.2 and 50.2. It is not a contract to which any of the borrowers are parties, and no provision in the Guide indicates any intent on the part of the FHLMC that third parties have a right to enforce it.[15] It should be noted, first, that interpretation

---

company accompanied by misrepresentation); *RNH, Inc. v. Beatty*, 571 So. 2d 1039 (Ala. 1990) (stating that duty to disclose arises when parties are not dealing at arm's length); *Chavers v. Nat'l Sec. Fire & Casualty Co.*, 405 So. 2d 1 (Ala. 1981) (bad faith tort claim against insurance company); *Brasher v. First National Bank*, 168 So. 42 (Ala. 1936) (bank had duty to disclose facts underlying investment into which it advised a widow to invest her late husband's insurance proceeds and failure of such duty was fraud).

[14]  *See, e.g., Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986) (a bank entering into a transaction in which it stands to gain and the customer to lose with a customer with whom it has a fiduciary relationship has a duty to disclose information material to the transaction which is peculiarly within its knowledge and not otherwise available to customer); *Capital Bank v. MVB, Inc.*, 644 So. 2d 515 (Fla. App. 3d Dist. 1994) (bank with fiduciary duty to customer breached that duty by failing to disclose material facts of which it was aware and which customer could not otherwise discover ) (citing *Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923 (Fla. 1986)).

[15]  *See* Guide § 50.2, which provides that the FHLMC can unilaterally change the terms of the Guide, a fact on which the *Hinton* court based its finding that borrowers are not third party beneficiaries of the FNMA servicing guide. *Hinton*, 945 F. Supp. at 1058.

20

of an unambiguous contract is a question of law for the court. *See Thomas v. Principal Financial Group*, 566 So. 2d 735, 738 (Ala. 1990) (citation omitted); *Alpine Constr. Co. v. Water Works Bd. of the City of Birmingham*, 377 So. 2d 954, 956 (Ala. 1979); *Riley v. South Somers Development Corp.*, 644 N.Y.S.2d 784, 786 (N.Y. App. Div. 1996). Whether or not a contract is ambiguous is also determined as a matter of law. *See Duncan v. Rossuck*, 621 So. 2d 1313, 1314 (Ala. 1993).

The provisions in question deal with the cancellation of mortgage insurance. Guide §§ 61.1-61.3. Under § 61.1, the seller/servicer warrants to the FHLMC that mortgage insurance will be maintained as required unless canceled in accordance with the provisions of sections 61.2 and 61.3 of the Guide. *Id.* Sections 61.2 and 61.3 outline the conditions that must be met for cancellation of mortgage insurance. Section 61.2(a) states that if the borrower submits a written request for cancellation and the conditions of those two sections are met, then the servicer must cancel the mortgage insurance. Plaintiffs' base their alleged third-party beneficiary status primarily on the argument that § 61.2 was written for their benefit. It is true that the plaintiffs are benefitted by this provision, but this benefit is incidental. The predominant purpose of these sections is to limit when mortgage insurance may be canceled. The plaintiffs' potential benefit is incidental to this primary purpose. Thus, the provisions in question were written primarily to ensure that the FHLMC was protected by mortgage insurance, and any benefit claimed by the plaintiffs is incidental. The court is of the opinion that the Guide is unambiguous on this point.

Moreover, the Fifth Circuit has held in an analogous context that borrowers are not third-

---

Accordingly, the FHLMC could, pursuant to its contract with the servicers, amend the Guide to extinguish the section on which plaintiffs' "right" is based at any time.

party beneficiaries of a mortgage servicing contract. In *Roberts v. Cameron-Brown Co.*, 556 F.2d 356 (5th Cir. 1977),[16] a borrower with HUD-assisted mortgage payments challenged a non-judicial foreclosure on the basis that certain guidelines set forth in the HUD Handbook were not followed. The Fifth Circuit found that the HUD Handbook was designed not for the benefit of the borrowers but for HUD-approved entities to service HUD-insured home mortgages. *Id.* at 360. As a result, the Fifth Circuit concluded that plaintiff merely was an "incidental beneficiary" of the HUD Handbook and not one who was intended to enforce the provisions of the Handbook. As the court stated, "the mortgagee . . . would have to intend that the mortgagor have an enforceable right" in order for an intended third-party beneficiary to be created. *Id.* at 362. The present situation is analogous to *Roberts*. The FHLMC did not intend to and has not created an enforceable right to cancel PMI. Therefore, the plaintiffs here are not intended third-party beneficiaries of the mortgage servicing guidelines set forth in the Guide. *See also Hinton*, 945 F. Supp. at 1057-58 (stating that borrowers not third-party beneficiaries of FNMA mortgage servicing guide).

Even assuming, *arguendo*, that the plaintiffs and the class members they purport to represent are third-party beneficiaries of the Guide, plaintiffs have still failed to state a claim for relief. First, a third-party beneficiary has the ability to enforce the contract between the parties only as written. *See BAII Banking Corp. v. UPC, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993) (third-party beneficiary possesses no greater right to enforce a contract than the parties to the contract);

---

[16] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), cases decided by the Fifth Circuit prior to October 1, 1981 are binding precedent in the Eleventh Circuit (to the extent they are not superseded by subsequent Eleventh Circuit decisions). *Roberts* was decided prior to October 1, 1981, but it is not binding precedent because it is not precisely on point.

*Barnum v. Millbrook Care Limited Partnership*, 850 F. Supp. 1227, 1234-35 (S.D.N.Y.) (third-party beneficiary does not have greater rights than promisee under the agreement sued upon), *aff'd*, 43 F.3d 1458 (2d Cir. 1994); *Downey v. Federal Express Corporation*, 1993 LEXIS U.S. Dist. 16114 at *7-8 (N.D. Cal., Oct. 29, 1993) (third-party beneficiary is bound by all of the terms and conditions of the contract and cannot pick and choose among them).[17]  The Guide requires the borrower to submit a written request to the servicer and that the requirements of one of the three options in Guide § 61.2 be met.  The Guide does not provide for automatic cancellation or for notice to be issued to borrowers.  Furthermore, contracting parties do not have a duty to disclose the terms of that contract to a third-party beneficiary even if the existence of such a beneficiary is intended by the contracting parties.  *See Total Containment, Inc. v. Environ Products, Inc.*, 1996 WL 239877 at *2  (E.D. Pa. May 6, 1996); Restatement (Second) Contracts § 311 (1981).  Accordingly, plaintiffs' third cause of action is due to be dismissed because they have not and cannot allege that there has been a breach of the contract between the FHLMC and its servicers regarding automatic cancellation or notice.

The cases upon which plaintiffs rely for the rights they claim as third-party beneficiaries are distinguishable.  For example, in *Beverly v. Macy*, the court found that the contract in question expressly required the servicer to provide premium due notices to the policyholder, and the policyholder had relied on receipt of the notices in the past.  702 F.2d 931, 938-39, 941-42 (11th Cir. 1983).  Thus, the present case is distinguishable because the Guide has no specific

---

[17]  The parties did not cite and the court could not find any cases that apply Alabama law in this context.  The court sees no reason why Alabama law would be any different on this point.  As to the Bauers, whose property is in New York, New York law is appropriate.

23

requirement of cancellation or notice, nor have homeowners relied on any such notice or cancellation in the past. This is true regardless of whether or not the plaintiffs in the present case are third-party beneficiaries of the Guide.

In *Palma v. Verex Assurance, Inc.*, the court held that a borrower was a third-party beneficiary of a mortgage insurance contract held by the lender that contained a provision specifically denying the insurer any right of subrogation against the borrower and identified the borrower by name. *Palma v. Verex Assurance, Inc.*, 79 F.3d 1453, 1457-58 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 625 (1996). The court held that this provision was written for the sole benefit of the borrower and was intended to and did benefit the borrower. *Id.* at 1458. Therefore, the borrower was a third-party beneficiary to the mortgage insurance contract. *Id.* The present case is distinguishable on many grounds. First, the present case involves a servicing contract, not an insurance contract. Second, no provision specifically references the borrower or mortgagor in the same way as in *Palma*. Finally, the Guide does not provide any contract right or establish any prohibitions that specifically inure to the benefit of the mortgagors in the way that the contract in *Palma* specifically denied the insurer a right of subrogation against the borrower. As noted above, the Guide's provisions are primarily designed to ensure that mortgage insurance is held long enough to protect the FHLMC's interests.

Plaintiffs also cite *Associated East Mortgage Co. v. Young*, 394 A.2d 899 (N.J. Sup. Ct. 1978), as support for their contention that plaintiffs are third-party beneficiaries of the Guide. *Young*, however, held that mortgagors could use the provisions of the handbook issued by HUD "to provide lenders with the information necessary to service HUD-insured home mortgages," *id.* at 903, as a basis for an equitable defense where lenders that had not complied with these

24

provisions were trying to foreclose against these mortgagors. *See id.* at 906-907. The court did not, however, hold that the mortgagors were third-party beneficiaries of the HUD handbook. Therefore, *Young* is inapplicable to the case at bar.

## IV.   CONCLUSION

Congress has seen fit to mandate mortgage insurance, or some other form of credit enhancement, for high LTV loans purchased by the FHLMC. The FHLMC has consequently provided for payment of mortgage insurance premiums in its standard form mortgage instruments. While the notion that borrowers at some appropriate time should be relieved of their obligation to pay for mortgage insurance premiums may have some equitable appeal, the standard form mortgages, which plaintiffs signed, do not provide for such a right. No authority has been presented that would warrant the court rewriting literally thousands, if not millions, of mortgage contracts. Plaintiffs' position in this putative nationwide class action would require such a rewriting. Accordingly, plaintiffs fail to state a claim upon which relief can be granted in each of their three claims for relief. Accordingly, the "First Amended Class Action Complaint" is due to be dismissed. An order in accordance with this opinion will be entered contemporaneously herewith.

DONE this 31st of January, 1997.

**SHARON LOVELACE BLACKBURN**
United States District Judge

25